CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

3/4/2019

JULIA C. DUDLEY, CLERK
BY: S/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| MARTIN WEBBER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 5:18-cv-0042 |
| ) | |
| AJAY VIRMANI, *et al.*, ) | By: Elizabeth K. Dillon |
| ) | United States District Judge |
| Defendants. ) | |

**MEMORANDUM OPINION**

Pending before the court are three motions, all of which are fully briefed and were argued before the court at a February 19, 2018 hearing. Two of the three motions are related: both concern whether plaintiff will be permitted to use at trial the late-disclosed opinions of one of its experts, Dr. Stone. On this issue, the court concludes that allowing the new opinions would be overly prejudicial to defendant at this late stage in the case. The court will therefore grant the defendants' motion to exclude the untimely opinions and deny plaintiff's motion for leave to supplement its expert opinions.

The third motion is a summary judgment motion, which is premised on defendants' assertion that many of plaintiff's allegations of negligence, as set forth in the complaint, are not supported by any of the expert opinions. As the parties agree, the absence of expert opinions is generally, absent "rare" circumstances not applicable here, fatal to a medical malpractice claim under Virginia law. *See Beverly Enters.-Va.v. Nichols*, 441 S.E.2d 1, 3 (Va. 1994) ("Expert testimony is ordinarily necessary to establish the appropriate standard of care, a deviation from that standard, and that such deviation was the proximate cause of damages."). Accordingly, any alleged breach of the standard of care that is unsupported by any expert testimony cannot go

forward to trial. *See Sharpe v. United States*, 230 F.R.D. 452, 459 (E.D. Va. 2005) (explaining that because the court was excluding all of plaintiff's expert opinions due to untimely and insufficient expert reports, summary judgment in favor of defendant was warranted). After conducting a careful comparison of the alleged negligence set forth in the complaint and the opinions offered by plaintiff to support those allegations, the court will grant in part and deny in part the motion for summary judgment.

## I. BACKGROUND

The parties are familiar with the factual background in this medical malpractice action, and thus it is unnecessary to discuss that background in any detail. Instead, the court will focus on the facts relevant to each of the motions in the context of discussing them below.

## II. DISCUSSION

### A. Motions Regarding Dr. Stone's Supplemental Designations

**1. Background**

This case was originally filed in state court, and significant amounts of discovery had been conducted, including expert discovery. When the case was on the verge of trial, plaintiff took a voluntary non-suit. Afterward, plaintiff refiled the case in this court. The court issued a scheduling order which, as relevant here, contained a number of deadlines related to expert discovery. Pursuant to that order (and including an agreed-upon brief extension), plaintiff timely designated two experts relevant here, neither of whom had been utilized as experts in the state case: Dr. Stone and Dr. Selwyn. Plaintiff's September 26, 2019 designation included expert reports, and defendants do not challenge the timeliness or the sufficiency of the initial expert disclosures.

On December 13, 2018, in advance of Dr. Stone's deposition, scheduled for December 18, 2018, plaintiff's counsel sent a letter to defense counsel intending to supplement plaintiff's original expert disclosures. The letter contained the following language:

> As Dr. Selwyn testified in his recent deposition, these additional documents did not change or alter his expert opinion. His medical opinions provided in the designation remain the same. The same holds true for Dr. Stone, however, you will obviously have the opportunity to question him at his deposition on Tuesday, December 18, 2018.

(Dkt. No. 35-1, at 3.)[1]

On December 18, 2018, counsel for defendants deposed Dr. Stone. On December 27, 2018 (which was a Thursday at 2:15 p.m.), plaintiff emailed "supplemental expert designations" with additional opinions to be offered by Stone, but no supplemental written report was included. The discovery cut-off date fell on that Sunday, December 30, 2018. Thus, there was effectively one and one-half business days from the supplemental designation to the cut-off of discovery.

After defendants filed their motion *in limine* on January 9, 2019, plaintiff sought leave from the court to supplement on January 11, 2019. The proffered supplemental report of Dr. Stone, however, was not provided to defense counsel until February 1.

As noted, arguments were heard on the pending motions on February 19, 2019. The pretrial conference is scheduled for March 21, and the trial is set to begin on April 5.

---

[1] To support plaintiff's claim that there was no surprise to defendants from any new opinions, plaintiff relies on the reference to defendants' ability to ask Dr. Stone in his deposition whether he has new opinions. The letter states, though, that Dr. Stone's opinions, like Dr. Selwyn's, "remain the same." Thus, defendants were not expecting him to offer new opinions at his deposition and could not have prepared for those new opinions.

3

## 2. Governing Law and Application

Rule 26(a) requires an expert witness to submit a written report that contains "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them . . . ." The report "should be a comprehensive document that, by itself, provides all the expert's opinions that will be offered at trial, along with the bases for those opinions." *Samsung Elecs. Co. v. Nvidia Corp.*, 314 F.R.D. 190, 198 (E.D. Va. 2016) (citations omitted). The report then "form[s] the basis for informed deposition-taking." *Id*.

There are also rules governing "supplementation," which has a narrow meaning in this context and must be distinguished from "gamesmanship." *Disney Enters., Inc. v. Kappos*, 923 F. Supp. 2d 788, 795 (E.D. Va. 2013). Under the governing discovery rules, parties have a duty to timely supplement expert reports if they are "incomplete or incorrect" "in some material respect" and "the additional or corrective information has not otherwise been made known to the other parties . . . ." Fed. R. Civ. P. 26(e)(1)(A). The supplemental information is due no later than the deadline for pretrial disclosures under Rule 26(a)(3)—so thirty days before trial. *Id.*; Fed. R. Civ. P. 26(a)(3).

Thus, supplementation is appropriate to "add or correct information," but a party may not use Rule 26(e) supplementation "whenever [it] wants to bolster or submit additional expert opinions" or it would "amount to unlimited expert opinion preparation." *Campbell v. United States*, 470 F. App'x 153, 157 (4th Cir. 2012). Put differently, the duty and ability to supplement "does not permit a party to make an end-run around the normal timetable for conducting discovery." *Colony Apartments v. Abacus Project Mgmt., Inc.*, 197 F. App'x 217, 231 (4th Cir. 2006); *see also East West, LLC v. Rahman*, 2012 WL 4105129, at *6 (E.D. Va. 2012) (quoting

*Abacus*). Rather, supplementation is "only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report." *Minebea Co. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005); *Disney Enters.*, 923 F. Supp. 2d at 795 (describing examples of "true supplementation" as "correcting inadvertent errors or omissions").

The court concludes that the new information and opinions from Dr. Stone are not mere "supplementation." Instead, it appears that the purpose of the additional opinions is to "bolster or submit additional expert opinions," which is not proper Rule 26(e) supplementation. *Campbell*, 470 F. App'x at 157. Thus, the court concludes that Dr. Stone's additional opinions are not properly characterized as "supplementation" under Rule 26(e).

Having found that the opinions are not mere supplementation but are instead wholly new opinions, the court easily concludes that plaintiff failed timely to disclose those opinions, as required by Rule 26 and the court's pre-trial order. Under such circumstances, the court must determine whether the nondisclosure was substantially justified or harmless. If so, then no action is required by the court. Fed. R. Civ. P. 37(c). If not, then the plaintiff may not be allowed to use the witness or the information, or the court may impose "other appropriate sanctions" in addition to, or instead of, exclusion. *Id*. If the court finds a disclosure violation that is not substantially justified or harmless, it has "broad discretion to select an appropriate remedy in light of the totality of the circumstances." *S. States Rack & Fixture, Inc., v. Sherwin-Williams Co.*, 318 F.3d 592, 593 (4th Cir. 2003).[2]

---

[2] There is some disagreement among courts as to whether Rule 37(c) or Rule 16(f) is the proper vehicle for imposing sanctions based on a party's failure to disclose a witness or expert opinions in accordance with a deadline set forth in a scheduling order. *See United States v. Thompson*, No. 7:14-cv-92, 2015 WL 2412249, at *4 & nn. 4–6 (W.D. Va. May 21, 2005). As the parties agreed at the hearing, the analysis is largely the same under either rule, *see id*. at n.6, and the court would reach the same result under either rule.

Under the *Southern States* test, the court looks to the following five factors to determine whether plaintiff's failure was "substantially justified or harmless":

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

Looking to those factors here, the court concludes that plaintiff's late disclosure was neither substantially justified nor harmless. Plaintiff does not offer much in the way of justification. He argues that the opinions are mere supplementation and further argues that some of the opinions were based on the review of transcripts that Dr. Stone had not reviewed at the time of his original report. Plaintiff does not explain, however, when those other depositions were taken or when the transcripts became available, or why there was any reason that the new opinions could not have been filed earlier. The report itself (required under the rules) was not even provided until February 1, which was more than a month after the December 30, 2018 discovery deadline and also after the January 11, 2019 summary judgment deadline.

Second, the court is not persuaded by plaintiff's argument that the late disclosure was harmless. Plaintiff contends that there was no unfair surprise in the new opinions identified in December and the report provided in February because they raised issues that defendants should have known were "issues in the case" based on past depositions and the complaint's allegations. But, as defendants note, an opposing party generally heavily relies on an expert's designation and report in preparing for that expert's deposition. As noted in *Sharpe v. United States*, 230 F.R.D. 452, 462 (E.D. Va. 2005), allowing additional time for plaintiff to amend outside the time-frame established by the rules and any scheduling order "would work unjustifiable hardship

6

upon the defendant in attempting to complete discovery and prepare for trial within the confines of the court's scheduling order."

It is also true that the disclosure was not as late as it could have been, in that it was not sprung on defendants at trial or in the weeks preceding trial. But the new opinions were not even mentioned until the very end of discovery, and the report was not provided until after summary judgment briefing. Additionally, it is noteworthy that, just days before, plaintiff had stated that Dr. Stone would not be offering new opinions. Thus, the court concludes there was a surprise to defendants and the late disclosure did prejudice them in their ability to address the new opinions in Dr. Stone's deposition and in any rebuttal reports, as well as in their summary judgment motion.

There is some possibility of curing the surprise here, but, realistically, the cure could not be effected without postponing the trial. Yes, a second deposition of Dr. Stone could be taken by defendants and that could likely be accomplished prior to trial. But the court presumes that defendants would then want to allow their own experts to offer rebuttal opinions, which could result in new defense expert reports and possibly requests by plaintiff for renewed defense expert depositions. Additionally, the renewed report was not provided until after the filing of defendants' summary judgment motion, and so any additional expert discovery might well result in another round of summary judgment briefing. In short, while the disclosure was not made during trial, it was made in a relatively short time period before trial in terms of the practical logistics of being able to cure any prejudice without postponing the trial. The court does not believe that a continuance of the case would be fair to defendants, who have had these claims pending against them since May 2016. Moreover, the court's calendar is currently extremely

full, so it is very unlikely that the court would be able to reschedule this trial, scheduled for seven days, anytime in the next six months.

Plaintiff asserts that the information is important, and the court agrees. That factor weighs in favor of allowing the amendment and trying to give defendant some opportunity for additional discovery. But in considering all of the factors, the court does not find that the importance of the opinions outweighs the considerations the court has highlighted above. In short, then, the late disclosure was neither harmless nor substantially justified.

For all of these reasons, the court will not allow Dr. Stone's new opinions to be used at trial. The court has considered lesser sanctions but, as noted above, allowing the new opinions would disrupt trial preparation and require postponement, which is not appropriate. Thus, plaintiff's motion to supplement will be denied, and defendant's motion *in limine* to exclude Dr. Stone's new opinions will be granted.

**B. Defendants' Motion for Summary Judgment**

As noted in the introduction of this opinion, the summary judgment motion is primarily premised on defendants' assertion that none of the allegations of medical malpractice in the complaint are supported by sufficient expert opinion, and, thus, that summary judgment is appropriate as against all claims. The parties agree on the allegations of negligence and discuss them in the same order, with some joined, and so the court will follow that order. Below each allegation of negligence, the court explains whether either of plaintiff's experts have offered an opinion that is sufficient to support that allegation. The court's explanation for each, albeit brief, is based on a thorough review of the expert reports of both Dr. Selwyn and Dr. Stone.[3] As is

---

[3] Although limited portions of Dr. Stone's deposition have been provided to the court, most of it has not. Likewise, Dr. Selwyn's deposition has not been provided. Thus, the court cannot know what additional detail may have been offered in their respective depositions. Plaintiff references the depositions in his opposition, claiming that "all opinions were expressed and elaborated upon at the depositions." But he has not provided those transcripts, nor

8

noted, some of the allegations lack expert support, and so the court will grant summary judgment as to those allegations, and they will not be presented to the jury. The remaining allegations survive summary judgment.

1. **Allegations 1 and 5:** (1) Failure to order and perform appropriate medical examinations, assessments, and other diagnostic methods to properly diagnose Plaintiff Webber's condition and determine the appropriateness of either a thrombin injection or surgical intervention of his pseudoaneurysm or whether such procedure was necessary at all; and (5) failure to properly examine Plaintiff Webber prior to the thrombin injection.

The court concludes that these allegations are supported by expert opinion. In his report, Dr. Selwyn's overall opinion is that "it was a deviation from the standard of care to use injected thrombin to treat" Webber. In support of that opinion, he claims that "limited ultrasound examinations" were available and states that there are defined criteria that must be established in order to indicate that use of a thrombin injection is safe, which criteria were not met. While his opinion was not very detailed, it is sufficient to support a claim that other assessments (or other tests) should have been done in order to satisfy the criteria before concluding thrombin injection was appropriate.

Dr. Stone's now-excluded supplemental report specifically states that a CT scan should have been performed prior to the procedure by Dr. Virmani–an opinion he also gave in his deposition (upon questioning by plaintiff's counsel, to which defendants objected). While his original report does not identify any specific test that should have been performed, it does explain that Webber's condition was not properly diagnosed (*e.g.*, Dr. Virmani's office "routinely incorrectly identified the pseudoaneurysm as related to the common femoral artery (CFA)" when it was in fact related to the superficial femoral artery (SFA). This failure falls broadly within the category of a "diagnostic method" that was not performed properly and led to

---

has he pointed to any specific portion of them that supports the specific allegations. Thus, the court limits its review to the reports.

an incorrect diagnosis. Dr. Stone also opines that Dr. Virmani failed to take into account the length of the neck of the pseudoaneurysm and thereby incorrectly determined the appropriateness of the thrombin injection. These opinions are sufficient to support the allegations.

Finding expert opinions to support these allegations, then, the court will deny summary judgment as to Allegations 1 and 5.

2. **Allegation 2:** [(a)] failure to properly inform Plaintiff Webber of the option for surgical intervention of the pseudoaneurysm, rather than a thrombin injection or doing nothing at all at that stage, and [(b)] failing to inform Mr. Webber of the lack of experience and current training of Dr. Virmani in evaluation of and performance of the procedure, including the decision to do this in his office versus a hospital or surgical center, and also by enlisting the assistance of a technician who did not perform sonograms on this part of the body.

For purposes of its discussion, the court has broken down allegation 2 into two subparts. As to Allegation 2(a), neither physician specifically states that defendants "did not inform" Webber of the option for surgical intervention. Dr. Stone in fact acknowledges that Webber was offered surgical intervention, but declined it. Dr. Stone claims instead that it was a breach of the standard of care not to offer Mr. Webber "other non-invasive options such as endograft placement." Dr. Selwyn states that it was a deviation of care to use injected thrombin and states that primary surgical management more likely than not would not have resulted in plaintiff's damages, but he does not state that there was a failure to *inform* Webber of any surgical option. Particularly with the focus of this allegation being on the failure to inform Webber of his option *for surgical intervention*, the court does not find support for this "failure to inform" in either expert report. Accordingly, the court will grant summary judgment as to Allegation 2(a).

The lack of experience and training of Dr. Virmani or his technician (Allegation 2(b)) is not referenced anywhere in either expert's report. Accordingly, as to that opinion, the court will grant summary judgment.

10

3. **Allegations 3 and 4:** 3) failure to properly inform Plaintiff Webber of the risks of injury that coincide with thrombin being injected into a pseudoaneurysm; 4) failure to obtain Plaintiff Webber's informed consent for the thrombin injection pseudoaneurysm procedure.

This allegation is somewhat similar to Allegation 2(a), in that it references a failure to inform plaintiff of certain facts, but, here, the allegations are that Webber was not *properly* informed of the risks of injury and thus that informed consent was not obtained. If, as the experts opine, Dr. Virmani did not himhimself properly recognize the the risks of injury with regard to treatment of Webber's pseudoaneurysm, then a reasonable jury could find that he could not have given a proper assessment of the available options and risks or obtained informed consent. *See Martin v. Lahti*, 809 S.E.2d 644, 688 (Va. 2018) (explaining that an informed consent claim requires a plaintiff to establish that the physician "breached the standard of care by failing to disclose the material risks associated with the treatment or procedure, or the existence of alternatives if there are any" and that the patient "would not have agreed to the treatment or procedure had the physician made a proper disclosure" of those risks and alternatives) (citations omitted). Viewed through that lens, the court concludes that there is expert support for this allegation, despite the fact that the opinions are not offered in the precise terms used in the allegation. Accordingly, summary judgment as to Allegations 3 and 4 will be denied.

4. **Allegation 6:** failure to coordinate and consult with the staff, physicians and any other relevant individuals, to ensure that any necessary procedures were performed properly and within the standard of care to properly inject thrombin into the pseudoaneurysm;

With regard to this allegation, plaintiff points only to one sentence in Dr. Stone's report that says that multiple providers of defendant "elected to simply observe this vessel defect for a total of 13 months instead of pursuing therapy for this condition." (Pl.'s Opp'n 17.) It is true, then, that Dr. Stone alleges a general failure to coordinate and consult in terms of diagnosing and looking at early treatment options. But Dr. Stone's opinion regarding coordination of care does

11

not relate in any way to "necessary procedures" or the thrombin injection, which is the heart of this allegation. Put differently, the court reads this allegation as a failure to coordinate care to ensure that the procedure itself was performed properly and that the injection was properly inserted within the standard of care during the *procedure*, not a general failure to coordinate and consult.

Under the court's reading, there is no support for this specific allegation in either report, and plaintiff has pointed to no other expert testimony to support this allegation, as is his obligation in responding to summary judgment. Accordingly, the court will grant summary judgment as to Allegation 6.

5. **Allegations 7 & 8:** 7) failure to properly evaluate, monitor, and attend to Plaintiff Webber during the thrombin injection procedure; 8) failure to render proper medical care for Plaintiff Webber as their patient due to the failure to properly administer the thrombin into the pseudoaneurysm;

Neither expert report offers any opinion regarding the treatment provided to Webber during the procedure or a failure to "properly administer the thrombin into the pseudo aneurysm," which, like Allegation 6, relates to events *during* the procedure. Plaintiff points to events that occurred after the procedure for support, but these allegations do not concern that time-frame. Even if the allegations could be read to apply to post-procedure care, neither expert opinion addresses post-procedure care. Because no expert has offered an opinion on any breach of the standard of care during the procedure itself, summary judgment as to Allegations 7 and 8 will be granted.

6. **Allegation 9:** failure to otherwise appropriately manage, treat, investigate, and diagnose Plaintiff Webber's condition in an effort to appropriately care for him and not cause a permanent injury from the failed thrombin injection; and

For the same reasons that Allegations 1 and 5 are supported by expert opinion, so is Allegation 9. In short, both physicians have offered opinions that, at the very least, the decision

12

to even offer thrombin injection was an action that fell below the standard of care. Summary judgment will be denied as to Allegation 9.

7. **Allegation 10:** failure to maintain an accurate treatment record of what was discussed and what occurred preceding and ensuing the procedure, as well as accurately communicate information to Plaintiff Webber about his procedure and anything that arose during the course thereof.

The court has reviewed both reports and neither this precise allegation, nor anything approximating it, is set forth in either report. Accordingly, summary judgment will be granted as to Allegation 10.

In addition to the primary focus of defendants' summary judgment motion, which is an alleged lack of expert testimony to support the allegations, the second half of defendants' motion raises what is essentially the other side of the same coin. Specifically, in the second half of their summary judgment motion, defendants assert that a number of the expert opinions offered do not relate to any allegation in the complaint. The court disagrees, and concludes that the defendants are reading the allegations in an extremely narrow fashion.

For example, defendants claim that the "complaint makes no allegation that Dr. Virmani improperly diagnosed plaintiff." (Defs.' Mem. Supp. Mot. Summ. J. 13.) In fact, though, that allegation is part and parcel of Allegation 1, which includes a failure to use "diagnostic methods to properly diagnose Plaintiff Webber's condition and determine the appropriateness of either a thrombin injection or surgical intervention." Although Allegation 1 also references a failure to order and perform appropriate medical examinations and assessments, a "diagnostic method" could include failing to consider or appropriately evaluate information before the physician and, thereby, making an incorrect diagnosis. In short, the allegation is contained in the complaint.

The court has considered defendants' other arguments in this section of their brief, (Defs.' Mem. Supp. Mot. Summ. J. 13–15), but concludes that they, too, are based on an overly

narrow reading of the allegations set forth in the complaint. The opinions held by Drs. Stone and Selwyn, as set forth in their reports, adequately relate to the allegations of the complaint such that they are not excludable.

### III. CONCLUSION

For the reasons set forth above, defendants' motion *in limine*, titled as an "Objection to Plaintiff's Untimely Designation of Expert Opinions" (Dkt. No. 27) will be granted, plaintiff's motion for leave to supplement expert designations (Dkt. No. 31) will be denied, and defendants' motion for summary judgment (Dkt. No. 25) will be granted in part and denied in part as set forth above. It will be granted only as to Allegations 2, 6, 7, 8, and 10, and otherwise denied. An appropriate order will be entered.

Entered: March 4, 2019.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge